Petitioner, Knox Kershaw, Inc. (hereinafter "KK, Inc.), requests this Court to compel the Honorable Mark G. Monteil of the Circuit Court of Montgomery County, Alabama, to order the defendants, Royce Kershaw, Jr. (hereinafter "Royce, Jr.") and Kershaw Manufacturing Company, Inc. (hereinafter "KM, Co."), to respond to discovery in a civil contempt proceeding. For the reasons set forth below, the writ is granted.
We recognize that this is not the first time we have been called on to review the non-competition agreements made the basis of this contempt proceeding. Although the facts have been well recited with particularity on two previous occasions by this Court, a brief recitation of the facts is necessary to afford a better grasp of the issues in this appeal.
On March 1, 1985, Knox Kershaw (hereinafter "Knox"), and KK, Inc. filed a complaint seeking a declaratory judgment and an injunction enjoining and restraining Royce, Jr. and KM Co. from leasing railroad maintenance equipment in alleged violation of a covenant in the non-competition agreements. The covenant restricted Royce, Jr. and KM Co. from engaging in any business that was either directly or indirectly competitive with the business conducted by KK, Inc.
After a hearing, the trial judge entered an order in favor of Knox and KK, Inc. on the grounds that the covenant not to compete was valid, and that Royce, Jr. and KM Co. had violated the agreement by attempting to enter into lease agreements. The trial judge's order stated, in part:
 "Royce Kershaw, Jr. and KM Co. [are] hereby restrained from offering for straight leasing, undercutters, shoulder cleaners, yard cleaners and switch under-cutters for that period and under the geographic restrictions as set forth in the noncompetition agreement executed by Royce Kershaw, Jr. on September 1, 1983, and for any extensions of time that may be granted in subsequent Orders of the Court."
On rehearing, the trial judge further clarified the scope of its order granting injunctive relief. That order stated, in part: *Page 252 
 "As used herein, the term 'straight leasing' means a transfer of the possession of the said machines by KM Co. for a consideration and for a specified term to a lessee without any agreement or option that the lessee may acquire legal title or ownership of the said machines. The term 'straight leasing' does not include lease-purchase agreements, leases with options to purchase or demonstration-purchase agreements entered into by KM Co. with any of its customers."
On appeal, in Kershaw v. Knox Kershaw, Inc., 523 So.2d 351
(Ala. 1988), this Court modified that part of the trial judge's order pertaining to the validity of the territorial language in the covenant. In all other respects, we affirmed the trial judge's order to the extent that it prohibited Royce Jr. and KM Co., for a five-year period, from leasing anywhere in the United States or Canada where KK, Inc. did business prior to September 1, 1983.[1]
On August 24, 1988, the petitioner, KK, Inc., filed a petition asking that KM Co. and Royce, Jr. be held to be in civil contempt for an alleged violation of the non-competition agreement and the injunctive order. The petition enumerated eight specific instances of alleged violations by Royce and KM Co. On September 23, 1988, KM Co. and Royce filed an answer asserting that the eight instances involved transactions that were lease purchase or demonstration-purchase agreements, which were authorized by the trial judge's order.
At the same time KK Co. filed its contempt petition, it served interrogatories and a request for production of documents on the defendants. That discovery sought information and production of certain documents pertaining to KM Co.'s transactions alleged in the contempt petition.
KM Co. did not answer any of the interrogatories or produce any of the documents, but rather on October 7, 1988, filed objections to the petitioner's interrogatories and request for production of documents. KM Co. objected to the discovery on the ground that the discovery sought information which, it says, "was totally irrelevant, illegal, and immaterial, and which was not reasonably calculated to lead to the discovery of admissible evidence" and on the ground that "the information and documents sought were private, confidential, proprietary, commercial information which Plaintiff was not entitled to obtain as a competitor in the marketplace with these Respondents."
On October 19, 1988, KK, Inc. filed a motion to compel the discovery. On April 11, 1989, KK, Inc. filed a second motion to compel, and a hearing was held on its motion. At the hearing KM Co. and Royce, Jr. provided certain documents for an in camera
inspection by the trial judge. Although KK, Inc. contends that it was not aware of the identity, description, or content of the documents, it contends that the documents were evidence of the relationships between KM Co. and the railroads that were made the basis of the contempt proceeding. These documents were purportedly the documents that petitioner sought to discover.
The record indicates that at the hearing the trial judge said that he would "review the documents in camera to determine whether the documents on their face violated the injunctive order." On June 6, 1989, the trial judge entered an order denying the motion to compel all the discovery sought by KK Co.
KK Co. argues that the discovery sought is essential to its preparation for the contempt proceeding. It asserts that the discovery is needed in order to determine if Royce, Jr. and KM Co. entered into transactions with the railroads named in its petition, and, if so, the nature of those transactions, and whether those particular transactions *Page 253 
violated the injunction. KM Co. argues that the discovery sought private and confidential commercial information among competitors, the disclosure of which would have been beneficial to KK, Inc. and detrimental to KM Co.
It is well settled that discovery rules should be liberally construed in order to provide the parties with information relevant to the litigation. Cole v. Cole Tomato Sales, Inc.,293 Ala. 731, 310 So.2d 210 (1975). However, Rule 26(c), A.R.Civ.P., recognizes that the right of discovery is not unlimited. The court is given broad power to control the use of the process and to prevent its abuse by any party. The rule does not allow an arbitrary limit on discovery, but instead vests the trial court with discretion in the discovery process.Campbell v. Regal Typewriter Co., 341 So.2d 120 (Ala. 1976).
Moreover, the trial court's role is to exercise its broad discretion in a manner that will allow full disclosure of relevant information and at the same time afford a party maximum protection against unnecessary disclosure. Ex parteGuerdon Industries, Inc., 373 So.2d 322 (Ala. 1979). Therefore, for this reason, mandamus will issue to compel discovery only in those cases where a clear abuse of discretion is shown. Exparte Dorsey Trailers, Inc., 397 So.2d 98 (Ala. 1981); Ex parteAlabama Power Co., 280 Ala. 586, 196 So.2d 702 (1967).
When assessing claims of confidentiality or privilege in discovery matters, the trial judge will often order that the documents be submitted for an in camera inspection. Where other portions of the document are discoverable, the trial judge might "excise" those portions of the documents that it finds to be confidential or privileged. This procedure allows the party seeking the discovery to obtain the information he legitimately needs, while at the same time the adverse party's confidences are preserved. Copies of any materials not required to be produced should be placed in a sealed envelope in the custody of the clerk of the court for preservation in the event of possible review by an appellate court.
Moreover, the trial judge could issue a protective order under Rule 26(c), A.R.Civ.P. With respect to protective orders, Rule 26(c) states in part:
 "Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition or production or inspection, the court in the circuit where the deposition or production or inspection is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery. . . ."
KK, Inc. argues that the trial judge effectively prejudged the merits of the contempt proceeding when it refused to allow the discovery. In particular, KK, Inc. argues that the trial judge has reversed the function and purpose of discovery in that discovery precedes, not follows, a determination of the merits of the litigation. We agree.
Royce, Jr. and KM Co. objected generally on the ground that the information sought was confidential. However, they did not seek a protective order or argue with any particularity why the discovery was confidential. Moreover, when the trial judge conducted the in camera examination of the documents, he apparently did not do so to determine if they were indeed confidential, but to determine if the documents violated the injunction. The trial court erred in denying the motion to compel on the basis that the documents did not violate the injunction.
Accordingly, the trial judge abused its discretion in refusing to issue an appropriate order allowing the discovery sought. *Page 254 
The trial judge is instructed to order the discovery requested by the petitioner, utilizing the above-described procedures if it finds portions of the discovery to be confidential and not discoverable. Therefore, the writ is due to be, and it is hereby, granted.
WRIT GRANTED.
HORNSBY, C.J., and MADDOX, JONES and ALMON, JJ., concur.
[1] We also note that on remand from this Court the trial court entered an order modifying the judgment as instructed inKershaw v. Knox Kershaw, Inc., 523 So.2d 351 (Ala. 1988). The trial court ruled that Knox and KK, Inc. were not entitled to damages, attorney fees, or an extension of the injunction. On appeal from that particular order, this Court in Knox Kershaw,Inc. v. Kershaw, 552 So.2d 126 (Ala. 1989), affirmed in part and reversed in part, holding that KK, Inc. was entitled to only nominal damages, an attorney fee, and an extension of the injunction.