598 So.2d 1372 (1992)
KNOX KERSHAW, INC.
v.
Royce KERSHAW, Jr., and Kershaw Manufacturing Company, Inc.
1901361.
Supreme Court of Alabama.
May 15, 1992.
William H. Mills of Redden Mills & Clark, Birmingham, for appellant.
James E. Williams and Oakley Melton, Jr. of Melton, Espy, Williams & Hayes, P.C., Montgomery, for appellees.
Robert Huffaker and Charles Stakely of Rushston, Stakely, Johnston & Garrett, P.A., Montgomery, for amicus curiae Miriam M. Kershaw.
SHORES, Justice.
This is the fourth time this case has been before this Court.[1] It arose out of dispute between two brothers, Royce Kershaw, Jr., and Knox Kershaw, when differences of opinion caused them to separate ownership of two companies, Kershaw Manufacturing Company, Inc. ("KM Co."), and Knox Kershaw, Inc. ("KK, Inc."), which had been formed originally by their father.[2] In separating *1373 the companies, they signed reciprocal noncompetition agreements. The question before us is whether the trial court followed the mandate of this Court on remand. Knox Kershaw and KK, Inc., appeal the trial judge's order awarding them $65,200 in attorney fees and providing for the extension of the noncompetition agreement for 90 days.[3]
The two brothers divided the companies on September 1, 1983. Knox took over as sole owner of KK, Inc., and Royce, Jr., obtained sole ownership of KM Co. Knox and KK, Inc., originally filed suit on March 1, 1985, against Royce, Jr., and KM Co., seeking an injunction to enforce the noncompetition agreement, as well as monetary damages for breach of contract, an award of attorney fees, and an extension of the term of the noncompetition agreement. After a nonjury trial, the judge issued the injunction; however, he expressly reserved for a future determination the issues concerning the propriety of an award of damages and attorney fees and an extension of the term of the noncompetition agreement. Royce, Jr., and KM Co. filed a motion asking the trial court to alter, amend, or vacate its order or, in the alternative, for a new trial.
Thereafter, the trial court issued an "Order on Rehearing," dated February 5, 1986, whereby it amended and clarified the original order, but denied all other requested relief. Royce, Jr., and KM Co. appealed from this order. This Court modified that part of the trial judge's order pertaining to the validity of the territorial language in the covenant, but otherwise affirmed the trial court's order to the extent that it prohibited Royce, Jr., and KM Co. for five years from leasing anywhere in the United States or Canada where KK, Inc., did business prior to September 1, 1983. Kershaw v. Knox Kershaw, Inc., 523 So.2d 351 (Ala. 1988).[4]
KK, Inc., then filed a motion in the trial court requesting that a hearing be scheduled to determine whether it was entitled to damages, an award of attorney fees, and an extension of the term of the noncompetition agreement. The trial court denied the motion on January 13, 1989, and KK, Inc., timely appealed. On appeal, this Court affirmed in part, reversed in part, and remanded the case to the trial court with the following statement:
"In summary, that part of the trial court's judgment denying an award of actual damages is affirmed; however, the remainder of the judgment, denying an award of nominal damages, attorney fees, and an extension of the noncompetition agreement, is reversed, and the cause is remanded for further proceedings consistent with this opinion."
Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126, 129 (Ala.1989).
A second trial judge held a status conference on November 16, 1989, following the remand from this Court. At that time, the parties submitted, by affidavit and by reference to pertinent parts of the 1985 trial record, the evidence and matters they desired to have the trial court consider in carrying out the mandate of this Court, as well as memorandum briefs. The trial judge ordered as follows:
"Accordingly, it is the ORDER, JUDGMENT and DECREE OF THE COURT that the Plaintiff have and recover of the Defendants the sum of $1.00 as nominal damages; attorneys' fees in the amount of $65,200.00 (652 hours at $100.00 an hour); and that the noncompetition agreement be and the same is hereby extended for a period of ninety days from the date of this Order; and by this *1374 Order, the Defendants, Royce Kershaw, Jr., and Kershaw Manufacturing Company, Inc., are hereby restrained from offering for straight leasing, undercutters, shoulder cleaners, yard cleaners, and switch undercutters for a period of ninety (90) days from the date of this order in any county or province in the United States or Canada in which the Plaintiff, Knox Kershaw, Inc., did business prior to September 1, 1983; provided, however, that this extension of the noncompetition agreement and this injunction shall not apply to any contracts or commitments made by the Defendant Kershaw Manufacturing Company, Inc., prior to the date of this Order."
Knox Kershaw and KK, Inc., then moved the court to alter, amend, or vacate the judgment of January 3, 1991, or, in the alternative, to grant a new trial. A third trial judge set the motion for a hearing on April 18, 1991; that judge heard the arguments of counsel and subsequently denied the motion. This appeal followed.
We must determine whether the second trial judge followed this court's mandate in Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126 (Ala.1989): (1) when he awarded $65,200 in attorney fees and expenses to KK, Inc., and (2) when he extended the noncompetition agreement for 90 days but provided that the injunction should not apply to contracts made prior to the date of the order.
We first consider the question of attorney fees. The noncompetition agreement between these parties provides in pertinent part:
"If [KK, Inc.] employs an attorney to enforce the provisions of this [agreement] or incurs any other expense in connection with the enforcement of the provisions of this [agreement], Royce Kershaw will reimburse [KK, Inc.] for such expense if [KK, Inc.] is successful in enforcing the provisions of this [agreement]."
552 So.2d 126, 129 (Ala.1989).
The appellants, Knox Kershaw and KK, Inc., argue that, under this Court's mandate, the trial court was to look to the express terms of the noncompetition agreement for guidance in the awarding of attorney fees. They contend that the agreement relating to attorney fees provides that Royce Kershaw is to reimburse KK, Inc., and that the amount awarded by the trial judge is insufficient to reimburse KK, Inc. The appellants claim $91,007.68 in attorney fees.
The appellee, Royce Kershaw, urges us to affirm the decision of the trial court as equitable and reasonable under all the facts and circumstances of this case. He argues that the appellants are not entitled to be reimbursed for the fees incurred in connection with the unsuccessful damages claim in this case. He contends that the trial court was not provided with any breakdown of the attorneys' time or fees that were allocated to the unsuccessful damages claim and that, therefore, the trial court, in its proper exercise of discretion, reduced the attorneys' hourly rate to offset the full rate charged by the attorneys, which included their time spent in the preparation and prosecution of KK's unsuccessful claim for damages.
We have previously set forth the following 12 criteria that the trial court should consider in setting attorney fees: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. Peebles v. Miley, 439 So.2d 137, 140-41 (Ala.1983). Although all of these criteria need not support the amount awardedindeed, rarely would all 12 criteria be applicable in a casethey are available for the trial court to consider in connection with each claim *1375 for an award of attorney fees. Graddick v. First Farmers & Merchants National Bank of Troy, 453 So.2d 1305 (Ala.1984).
We recognize that the reasonableness of an award of attorney fees is within the discretion of the trial court, subject to correction only for an abuse of discretion. Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740 (Ala.1988), after remand, 586 So.2d 192 (Ala.1991); Lolley v. Citizens Bank, 494 So.2d 19 (Ala.1986). Based upon a consideration of these criteria, we cannot say that the trial court erred in setting the attorney fees.
We next consider whether the trial court erred in its holding as to the noncompetition agreement. That agreement provides as follows:
"Therefore, for a period of five (5) years after the date hereof, Royce Kershaw will not ... engage in any business which is competitive with that of [KK, Inc.] as an owner, stockholder, partner or employee, nor will he in any other way compete, directly or indirectly, with [KK, Inc.,] or make his services or financial resources available to any other person, firm or corporation competing with [KK, Inc.]...."
The following provisions of the noncompetition agreement are applicable if the restrictions are violated:
"If Royce Kershaw violates the restrictions [set out in this agreement], the period during which the [agreement] shall apply shall be extended one (1) day for each in which a violation of this [agreement] occurs, and if suit is brought to enforce this [agreement] and [KK, Inc.,] establishes one or more violations by Royce Kershaw, [KK, Inc.,] shall be entitled to an injunction restraining Royce Kershaw from further violations for a period of two (2) years from the date of the final decree less only such number of days that Royce Kershaw has not violated this Agreement...."
552 So.2d at 128-29. The agreement was signed September 1, 1983, and had a natural expiration date five years thereafter, on September 1, 1988.
KK, Inc., argues that the evidence shows that the KM Co. and Royce, Jr., violated the terms of the agreement for a period of at least 13 months and 5 days, and, thus, it claims that the restrictions of the agreement should be extended for that full period. It further contends that the trial court erred in providing that the injunction should not apply to any contracts or commitments made by KM Co. prior to the date of the order. KK, Inc., argues that because of the seasonal nature of railroad work, the court order left KM Co. free to perform and receive the revenue from work done in the summer of 1991, provided it had a contract before January 3, 1991. This, KK, Inc., claims, was at odds with our decision in Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126 (Ala.1989).
KM Co. and Royce, Jr., counter with the argument that when the covenant expired under its own terms on September 1, 1988, this case was pending in the circuit court. The trial court did not issue an order dissolving the injunction. It remained in full force through January 13, 1989, thus extending the covenant for a period of 134 days. It was extended for an additional 90 days under the order involved in this appeal. This total of 224 days, they argue, exceeds any number of days when any violations arguably occurred. We agree.
This case was submitted to the trial court on stipulated facts. No testimony was taken; therefore, there is no presumption that the judgment was correct. This Court sits in judgment on the evidence in the same manner as did the trial court. Pennington v. Bigham, 512 So.2d 1344 (Ala.1987); Epps Aircraft, Inc. v. Montgomery Airport Authority, 570 So.2d 625 (Ala.1990).
We have carefully examined the evidence, and we find no error on the part of the trial judge. The principal evidence before the trial court was the affidavit evidence of Jefferson W. Davis, the former executive vice president of KM Co. His affidavit admits that the noncompetition agreement was arguably violated by the company a total of 195 days. This evidence *1376 was apparently used by the trial judge in making his computations, and there is credible evidence to support the judgment. Therefore the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
MADDOX, J., concurs specially.
MADDOX, Justice (concurring specially).
On the original appeal in this case, I was of the opinion that the trial judge was correct and I would have affirmed that judgment. See Kershaw v. Knox Kershaw, Inc., 523 So.2d 351, 360 (Ala.1988) (Maddox, J., joining Almon, J., who dissented). Even though I thought that the original judgment was due to be affirmed, a majority of this Court reversed that judgment and remanded the cause to the trial court for further proceedings. The sole issue on this appeal is whether the trial court followed the mandate of this Court.
I was almost persuaded by the appellant's argument that the trial judge had not followed the mandate of this Court, but after due and deliberate study, I was finally convinced that the time had come for this case to be concluded and that the appellant had not shown such error in the judgment that it was due to be reversed again.
NOTES
[1] Kershaw v. Knox Kershaw, Inc., 523 So.2d 351 (Ala.1988); Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126 (Ala.1989); and Ex parte Knox Kershaw, Inc., 562 So.2d 250 (1990).
[2] The father, Royce Kershaw, is described as a "railroad genius" who invented and manufactured railroad machines. He formed the Kershaw Manufacturing Company in 1944. He also formed the RK Co. (which became the KK Co.), which rendered contract services to maintain railroad tracks.
[3] Mrs. Miriam Kershaw, the mother of the two men and a preferred stockholder of KM Co., intervened in the case. She contends that the judgment of the trial court should be affirmed in order to conclude the litigation and to end the discord between her sons.
[4] This case was decided on March 11, 1988. On August 24, 1988, KK, Inc., filed a petition asking that KM Co. and Royce, Jr., be held in civil contempt for eight specific alleged violations of the noncompetition agreement. During discovery, the trial judge denied a motion to compel all the documents sought by KK, Inc. KK, Inc., petitioned this Court for a writ of mandamus, and we instructed the trial judge to order the discovery requested. Ex parte Knox Kershaw, Inc., 562 So.2d 250 (Ala.1990).